T.C. Memo. 1996-70

UNITED STATES TAX COURT

BRYAN J. AND CHRISTINE N. BAUGH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12366-94.        Filed February 21, 1996.

<u>J. Scott Broome</u>, for petitioners.

<u>Carol A. Szczepanik</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies in petitioners' Federal income taxes and an addition to tax and penalties as follows:

| Year | Deficiency | Addition to Tax & Penalties Sec. 6653(a)(1) | Sec. 6662(a) |
|------|-----------|----------------------|--------------|
| 1988 | $4,242 | $212 | --- |
| 1990 | 7,724 | --- | $1,545 |

| 1991 | 7,372 | --- | 1,474 |
| 1992 | 9,118 | --- | 1,824 |

Respondent, in an amended answer pursuant to section 6214(a), asserted increased deficiencies in tax and penalties as follows:

| Year | Increase in Deficiency | Increase in Penalties Sec. 6662(a) |
|---|---|---|
| 1990 | $991 | $198 |
| 1991 | 143 | 29 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

On brief, petitioners conceded the following: (1) The deficiency and addition to tax for 1988 as determined by respondent, (2) the portion of the deficiency that represents the per diem payments received between June and December 1992 from petitioners' employers, and (3) the increased deficiencies asserted for 1990 and 1991 in respondent's amended answer. After these concessions, the issues remaining for decision are: (1) Whether the per diem payments petitioners received during 1990, 1991, and a portion of 1992 constitute taxable income; (2) if the per diem amounts are taxable income, whether petitioners are entitled to deduct an allowance for travel expenses incurred while away from Port Clinton, Ohio; and (3) whether petitioners are liable for the accuracy-related penalty for negligence or disregard of rules or regulations for 1990, 1991, and 1992.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time the amended petition was filed, petitioners' mailing address was North Hickory Ridge Drive in Port Clinton, Ohio (Port Clinton).

During late 1985 or 1986, petitioners met in Port Clinton. Petitioner Bryan J. Baugh (Mr. Baugh) lived in Port Clinton while he was working at Davis-Besse Nuclear Power Plant (Davis-Besse), located approximately 15 miles from Port Clinton. Petitioners were married on October 17, 1987.

Mr. Baugh was employed as a radiation protection technician (RPT) from at least 1985. Petitioner Christine N. Baugh (Mrs. Baugh) worked as an RPT during the years in issue. RPT's are generally brought in by nuclear power plants during shutdowns to supplement the full-time staff of the plant. RPT's like petitioners work for outside contractors, and their employment term lasts for the duration of the shutdown. Mr. Baugh attempted to secure permanent employment as an RPT with Davis-Besse in June 1988 but was unsuccessful.

Petitioners worked as RPT's for the following nuclear power plants for the stated periods:

| Period | Location |
|--------|----------|
| 9/19/88 to 12/16/88 | Wolf Creek, Burlington, KS |
| 2/17/89 to 7/7/89 | Beaver Valley, Midland, PA |
| 8/14/89 to 12/29/89 | Beaver Valley, Midland, PA |
| 1/22/90 to 3/25/90 | Hatch Nuclear, Baxley, GA |
| 4/16/90 to 5/26/90 | Fitzpatrick, Oswego, NY |
| 6/11/90 to 1/26/91 | D.C. Cook, Bridgman, MI |
| 2/25/91 to 6/12/91 | Limerick, Sanatoga, PA |
| 8/12/91 to 11/22/91 | Hatch Nuclear, Baxley, GA |
| 12/9/91 to 8/21/92 | Fitzpatrick, Oswego, NY |
| 9/8/92 to 11/20/92 | Hatch Nuclear, Baxley, GA |

While petitioners were between jobs, they sometimes drew unemployment compensation. During 1991, petitioners received unemployment compensation from Michigan. During 1992, petitioners received unemployment compensation from New York.

Petitioners were paid the following amounts for "per diem/travel" in addition to their wages during the years in issue:

| Year Ended | Employer | Mr. Baugh | Mrs. Baugh |
|------------|----------|-----------|------------|
| 12/31/88 | Energy Personnel | $ 8,680 | --- |
| | PSES | 3,960 | $ 2,490 |
| 12/31/90 | ARC | 13,762 | 13,759 |
| 12/31/91 | Bartlett | 1,900 | 1,900 |
| | ARC | 11,783 | 10,729 |
| 12/31/92 | Bartlett | 16,630 | 15,080 |

Petitioners did not have to account to their employers for expenses incurred in order to receive the per diem/travel amounts. Petitioners did not receive Forms W-2 or 1099 that showed the per diem/travel amounts, and they did not report any of the per diem/travel amounts as income on their Federal income tax returns for the years in issue.

Because they began to travel out of State to work in nuclear plants, petitioners gave up their apartment in Port Clinton

during 1988. Petitioners generally rented apartments, trailers, or houses while they were working at various power plants. In early 1991, petitioners purchased a trailer that they moved from job to job so they would not have to worry about finding accommodations at each job site. The trailer also provided an easier way to move petitioners' personal belongings from job site to job site. Until mid-1990, petitioners stayed with Mrs. Baugh's parents on Hickory Ridge Drive (Hickory Ridge) in Port Clinton when petitioners returned to Port Clinton between jobs. For convenience in receiving their mail, petitioners used the Hickory Ridge address when they were on work assignments away from Port Clinton. Petitioners maintained their voter and car registrations and their driver's licenses in Port Clinton, using the Hickory Ridge address.

In April 1990, petitioners purchased a duplex located at 414 and 414-1/2 Monroe Street (Monroe) in Port Clinton. Petitioners wanted to purchase property so they would not have to stay with Mrs. Baugh's parents when they were in Port Clinton and so they would have a place to store furniture. Petitioners chose to purchase a duplex because they knew they would be away from Port Clinton on work assignments and having a tenant living on the premises would provide security. Petitioners hired Jack Bradley Realty to manage the Monroe Street property. Petitioners rented 414 Monroe beginning in mid-1990 and continuing throughout 1992, except for 2 months in 1992. Petitioners did not begin to rent 414-1/2 Monroe until mid-1992. Petitioners derived no income

from employment at nuclear power plants within a commuting distance of Port Clinton from 1990 through 1992.

In September 1992, petitioners purchased a triplex in Port Clinton for investment purposes.

Petitioners hired Tom Tomasek (Tomasek), who worked for Professional Bookkeeping Service, Inc., located in Blair, Nebraska, to prepare their 1990, 1991, and 1992 tax returns. Petitioners never met Tomasek. A coworker recommended Tomasek, a former internal revenue agent and accountant for approximately 10 years, to petitioners. Tomasek had experience working with nuclear plant employees like petitioners. Mr. Baugh initially contacted Tomasek by telephone to inquire about the taxability of petitioners' per diem/travel allowances. During their first conversation, Tomasek explained the criteria for excluding the per diem/travel amounts from gross income.

In preparing petitioners' 1990, 1991, and 1992 Federal income tax returns, Tomasek did not include the per diem/travel amounts in gross income. On petitioners' 1990, 1991, and 1992 returns, both 414 Monroe and 414-1/2 Monroe were listed as rental property on Schedule E, Supplemental Income and Loss. Line 1A of Schedule E, Supplemental Income and Loss, on the 1990 and 1991 returns and line 1B of Schedule E, Supplemental Income and Loss, on the 1992 return show "DUPLEX - 414 & 414.5 MONROE ST" as the kind and location of petitioners' rental real estate property. On petitioners' 1990 return, petitioners claimed duplicate deductions for real estate mortgage interest on both Schedule A,

Itemized Deductions, and Schedule E, Supplemental Income and Loss. Petitioners claimed duplicate deductions for real estate taxes on Schedule A and Schedule E of their 1990 and 1991 returns. On Schedule A of their 1991 and 1992 returns, petitioners deducted interest paid on their travel trailer as home mortgage interest. On Schedule E of their 1991 and 1992 returns, petitioners deducted the total interest paid on 414 and 414-1/2 Monroe as a rental expense.

In January 1992, Tomasek sent to petitioners a letter regarding the Internal Revenue Service's increased attention to per diem amounts. Mr. Baugh contacted Tomasek to inquire again about petitioners' per diem amounts.

OPINION

Gross income includes all income from whatever source derived. Sec. 61. Per diem payments, however, may be excluded from income if the requirements of section 1.162-17(b)(1), Income Tax Regs., are met.

> The employee need not report on his tax return (either itemized or in total amount) expenses for travel, transportation, entertainment, and similar purposes paid or incurred by him solely for the benefit of his employer for which <u>he is required to account and does account to his employer</u> * * * [Emphasis added.]

See also sec. 1.62-2, Income Tax Regs. At trial, Mr. Baugh admitted that petitioners did not have to account and did not account to their employers for expenses they incurred in order to receive the per diem/travel amounts. Petitioners, therefore, do not meet the requirements of section 1.162-17(b)(1), Income Tax

Regs., and cannot exclude the per diem/travel amounts from their gross income.

Deductibility of Per Diem/Travel Amounts

On brief, petitioners focused on the deductibility of the per diem/travel amounts as ordinary and necessary travel expenses under section 162(a)(2). Section 162(a)(2) provides:

> (a) In general.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including--
>
> *  *  *  *  *  *  *
>
> (2) traveling expense (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business * * *

Therefore, for a traveling expense to be deductible, three requirements must be satisfied: (1) The expense must be reasonable and necessary; (2) the expense must be incurred while away from home; and (3) the expense must be incurred in the pursuit of business. Commissioner v. Flowers, 326 U.S. 465 (1946); Brandl v. Commissioner, 513 F.2d 697 (6th Cir. 1975), affg. T.C. Memo. 1974-160.

Petitioners bear the burden of proving that they are entitled to any claimed deduction. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). This burden includes substantiating the amount of the item claimed. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d

821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.; see also sec. 1.162-17(d), Income Tax Regs.

While the parties disagree as to whether or not petitioners have adequately substantiated the amounts they are now claiming as deductions, petitioners have failed in any event to meet their burden of showing that they are entitled to a deduction pursuant to section 162(a)(2).

The purpose of the "away-from-home" deduction is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Kroll v. Commissioner, 49 T.C. 557, 562 (1968). An obvious precondition to petitioners' being away from home is that they have a home. Bochner v. Commissioner, 67 T.C. 824, 828 (1977). This means that petitioners must have incurred substantial continuing living expenses at a permanent place of residence and also have paid the expenses incurred in connection with their employment while on the road. Brandl v. Commissioner, supra at 699; see also James v. United States, 308 F.2d 204 (9th Cir. 1962); Bochner v. Commissioner, supra. One who has neither a principal place of business nor a permanent residence is considered an itinerant. Michel v. Commissioner, 629 F.2d 1071, 1073-1074 (5th Cir. 1980), affg. T.C. Memo. 1977-345. An itinerant may not deduct expenses under section 162(a)(2), because he is never considered to be "away from home". Id. at 1073.

While petitioners' subjective intent is to be considered in determining whether they have a tax home,

> objective financial criteria bear a much closer relationship to the underlying purposes of the deduction than do various other indicia of residence evidencing merely a taxpayer's subjective opinion regarding the location of his home. * * * [Brandl v. Commissioner, supra at 699-700.]

See also Markey v. Commissioner, 490 F.2d 1249, 1255 (6th Cir. 1974), revg. T.C. Memo. 1972-154.

At trial, petitioners testified to their maintenance of voter registrations, car registration, and driver's licenses in Port Clinton as an indication of their intent to make Port Clinton their tax home. Petitioners both testified regarding their intent to make Port Clinton their home, but petitioners' tax home is not where their hearts lie. See Bochner v. Commissioner, supra at 828-829. The significance that petitioners ascribe to Port Clinton is not dispositive of whether petitioners' tax home, within the meaning of section 162(a)(2), is Port Clinton. See Markey v. Commissioner, supra.

Petitioners provided little evidence that would indicate that they incurred duplicate living expenses in maintaining 414-1/2 Monroe. No evidence was presented to show that petitioners ever set up house at 414-1/2 Monroe, such as the purchase of appliances, other household goods, or even groceries. See Rambo v. Commissioner, 69 T.C. 920, 922 (1978). Petitioners' only testimony at trial to this effect was their use of

414-1/2 Monroe to store their furniture and their self-serving statements of their intent that Port Clinton be their tax home.

The objective facts in the record show that petitioners treated both 414 and 414-1/2 Monroe as rental property on Schedule E of their 1990, 1991, and 1992 Federal income tax returns. Furthermore, petitioners deducted the interest paid on their travel trailer, not the interest paid on 414-1/2 Monroe, as home mortgage interest on their 1991 and 1992 returns. During 1990, 1991, and 1992, petitioners did not earn income from work at nuclear plants within commuting distance of Port Clinton.

Petitioners incurred their normal living expenses at each place they stayed. See Scotten v. Commissioner, T.C. Memo. 1966-206, affd. 391 F.2d 274 (5th Cir. 1968). Petitioners could not have resided more than 2 weeks at 414-1/2 Monroe in 1990. During 1991, petitioners could not have resided more than 4 weeks, 8 weeks, and 2 weeks at different intervals at 414-1/2 Monroe. Petitioners did not reside at 414-1/2 Monroe during 1992.

During 1990, 1991, and 1992, petitioners were itinerants, literally (with respect to their trailer in 1991 and 1992) and figuratively carrying their home with them as they traveled from job to job. Thus, petitioners did not incur additional and duplicate living expenses, and they are not entitled to deduct any expenses under section 162(a)(2).

Section 6662(a) Accuracy-Related Penalty

Section 6662(a) imposes a penalty in an amount equal to 20 percent of the underpayment of tax attributable to one or more of the items set forth in section 6662(b). Respondent asserts that the entire underpayment of petitioners' tax was due to negligence or intentional disregard of rules or regulations. Sec. 6662(b)(1). Except for the increased penalties set forth in respondent's amended answer, for which respondent bears the burden of proof, petitioners bear the burden of proof on the penalties in issue. Rule 142(a).

"Negligence" includes a failure to make a reasonable attempt to comply with the provisions of the internal revenue laws. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. "Disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

The accuracy-related penalty does not apply with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that petitioners acted in good faith with respect to such portion. Sec. 6664(c)(1). The determination of whether petitioners acted with reasonable cause and in good faith depends upon the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Reliance on a qualified adviser will constitute reasonable cause only if the taxpayers have acted in good faith and have made full disclosure of all relevant facts to the adviser. Paula

Constr. Co. v. Commissioner, 58 T.C. 1055, 1061 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973). Petitioners, in order to show good faith reliance, must at least establish: (1) That they provided the return preparer with complete and accurate information; (2) that an incorrect return was a result of the preparer's mistakes; and (3) that they believed in good faith that they were relying on the advice of a competent return preparer. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987).

Petitioners hired Tomasek, an accountant who claimed experience with nuclear plant employees and per diem payments, to prepare their 1990, 1991, and 1992 returns. While petitioners claim that they disclosed all relevant tax information to Tomasek and that Tomasek advised them that the per diem/travel amounts were not includable in gross income, petitioners' testimony is uncorroborated and subject to question. Considering the evidence, it is difficult to believe that petitioners fully disclosed all of the relevant tax information to Tomasek. Petitioners' claim that Tomasek told them that they had a "home" in Port Clinton and that, therefore, the per diem/travel amounts could be excluded from gross income is contrary to Tomasek's treatment of both 414 and 414-1/2 Monroe as rental property on petitioners' 1990, 1991, and 1992 returns.

Petitioners admitted at trial that they did not review their tax returns, except to determine the amount of tax owed, for the years in issue. While petitioners argue that they did not know

that 414 and 414-1/2 Monroe were both being treated as rental properties, a cursory review of the returns would have provided petitioners with such knowledge. Line 1A of Schedule E, Supplemental Income and Loss, on the 1990 and 1991 returns and line 1B of Schedule E, Supplemental Income and Loss, on the 1992 return clearly state "DUPLEX - 414 & 414.5 MONROE ST" as the kind and location of petitioners' rental real estate property. A review of the returns in question would have also shown the duplicate deductions taken in 1990 for mortgage interest and in 1990 and 1991 for real estate taxes. Failure to review the returns prepared for them by another is itself negligence. Metra Chem Corp. v. Commissioner, supra at 662; Bailey v. Commissioner, 21 T.C. 678, 687 (1954).

Petitioners have not established reasonable cause or good faith reliance to excuse themselves from the penalties for negligence or intentional disregard of rules or regulations. See Mack v. Commissioner, T.C. Memo. 1995-482.

To reflect the foregoing and concessions of the parties,

Decision will be entered

under Rule 155.